| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Jones & Jones<br>45 Essex Street<br>Hackensack, New Jersey 07601<br>(201) 487-3600<br>Attorneys for Spencer Savings<br>Bank, SLA<br><br>/s/VINCENT J. MASSA III, ESQ.<br>Vincent J. Massa III<br>Identification No. 1085 | |
| In Re:<br><br>PLAINFIELD APARTMENTS, LLC, | CASE NO. 09-30679 MS<br>CHAPTER 11<br>Hearing Date: 09/16/09<br>Judge: Hon. Morris Stern, USBJ |

**REPLY BRIEF ON BEHALF OF SPENCER SAVINGS BANK, SLA IN FURTHER SUPPORT OF MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1112(b) DISMISSING THE DEBTOR'S BANKRUPTCY PETITION FOR CAUSE, INCLUDING BAD FAITH, OR IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. § 362(d)(1) AND (2) GRANTING RELIEF FROM THE AUTOMATIC STAY**

1

Spencer Savings Bank, SLA ("Spencer"), a banking association organized and existing under the laws of the United States of America, by and through its attorneys, Jones & Jones, submits this reply brief in support of its motion (the "Motion"), for the entry of an Order dismissing the Debtors' bankruptcy petition pursuant to section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") for cause, including that it is a "bad faith" filing, or, in the alternative, for an Order pursuant to Bankruptcy Code § 362(d) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure granting Spencer relief from the automatic stay to prosecute a state foreclosure action to conclusion.

## **Preliminary Statement**

The opposition of Debtor Plainfield Apartments, LLC ("Debtor" or "Plainfield") erroneously contends that Spencer has failed to show "cause" for the dismissal of Debtor's bankruptcy case.  Equally without merit is Debtor's contention that Spencer has not shown the lack of an equity cushion, which justifies granting Spencer relief from the automatic stay.

Cause exists pursuant to Bankruptcy Code § 1112(b) to dismiss this case as a "bad faith" filing, as well as on the grounds that there is a complete absence of any likelihood of rehabilitation and there is a substantial or continuing loss to the estate.

In the alternative, cause exists pursuant to Bankruptcy Code § 362(d)(1) to grant Spencer relief from the automatic stay to prosecute a foreclosure action to conclusion because of Debtor's bad faith resort to Chapter 11, and its inability to adequately protect Spencer's interests in the Real Property.

While the Debtor unsuccessfully attempts to artificially manufacture disputed issues of fact in its efforts to defeat Spencer's Motion, Debtor, in the process, makes factual concessions that justify granting Spencer's Motion in its entirety.

**UNDISPUTED MATERIAL FACTS**

1. Debtor's sole assets consist of nine (9) residential apartment complexes (the "Apartments"), also located in Plainfield, New Jersey. *See* Par. 3 of the previously submitted October 6, 2009 Certification of Charles P. Woehrle, Jr. (the "Woehrle Cert.").

3

2. Spencer holds, among other things, a first mortgage on the real property (the "Real Property"), on which the Apartments are located, which secures Spencer's claims against Debtor for in excess of $18,804,144.65. *See Id.* at Par. 4.

3. Simultaneously with the execution and delivery of the Note and Mortgage, Debtor executed and delivered to Spencer an Absolute Assignment of Rents, Profits & Lease ("Assignment") which immediately vests in Spencer the right to collect the rents from the Property, with a revocable license back to the Debtor. *See Id.* at Par. 11.  A copy of the recorded Assignment is annexed to the Debtor's Application as Exhibit C.

4. In addition to the Mortgage held by Spencer, the Plainfield Municipal Utilities Authority (the "PMUA") is owed approximately $450,000.00 and bills the Debtor $91,762 per calendar quarter or roughly $30,587.34 per month (the foregoing is based on the *Certification of James Perry* submitted to the Court on behalf of the PMUA).

5. Aside from the real property which secures Spencer's claims, the Debtor has no assets, no working capital,

4

1092861.1

and no reasonable prospects of obtaining the additional financing necessary to manage the Apartments and to repay Spencer. *See Id.*

6. At present, between Spencer and the PMUA, there are combined liens of at least $19,250,000.00 on the Property which have an appraised value of $19,610,000.00. *See Id.* at Par. 15.

7. Between the interest accruing on Spencer's debt and the PMUA's charges, not to mention the interest accruing on the tax sale certificates in the approximate sum of $350,000.00 sold by the PMUA, Spencer's equity cushion will be eroded in less than three and a half (3.5) months. *See Id.*

8. In addition to the Mortgage held by Spencer, the Plainfield Municipal Utilities Authority (the "PMUA") is owed approximately $450,000.00 and bills the Debtor $91,762 per calendar quarter or roughly $30,587.34 per month (the foregoing is based on the *Certification of James Perry* submitted to the Court on behalf of the PMUA), whereas the Debtor's proposed budget provides only for payments of approximately $18,500.00/month for water (which is not included in the foregoing

1092861.1

5

sums), and, according to Debtor's October 23, 2009 brief submitted in opposition to Spencer's Motion, $12,500.00/month for trash collection. *See Id.* at Par. 14.

9. The Note and Mortgage specifically provide for Spencer's right to collect a prepayment charge even in the event of acceleration.

10. On or around June 25, 2009, Spencer commenced a foreclosure action against the Real Property in the Superior Court of New Jersey, bearing the Docket No. F-25690-09 (the "Foreclosure Action"), which was venued in Union County, New Jersey. *See Id.* at Par 16.

11. Spencer was preparing to file a motion for the appointment of a rent receiver when Debtor filed this petition. *See Id.* The commencement of this bankruptcy case on August 7, 2009 automatically stayed the Foreclosure Action. *See Id.*

12. Debtor admits that they have not made the approximately $29,000.00 monthly tax payment because rent collections are $90,000.00 below forecast and unexpected repairs of $37,000.00 had to be made to the

6

boilers and elevators. *See* October 23, 2009 Certification of V. Valle Schloesser ("Schloesser Cert.") at Par. 9.

13. Debtor is not paying Spencer the sums due pursuant to Note and the Mortgage due on the properties.

14. Debtor is not current on its post-petition obligations to pay certain vendor bills in the amount of $29,086.22. *See* Schloesser Cert. at Par. 9.

15. Debtor has not paid the $20,000.00 adequate protection payment that it volunteered to the Court to pay as part of its cash collateral motion.

16. With the default rate of interest, Spencer is accruing at $230,000.00/month, Spencer's equity cushion will evaporate in 3.5 months.

17. Debtor's rent collection revenue is $90,000.00 below its projections.

**ARGUMENT**

**I**

**CAUSE EXISTS TO DISMISS THE DEBTOR'S BANKRUPTCY PETITION PURSUANT TO 11 U.S.C. § 1112(b) AS IT IS A CLASSIC "BAD FAITH" FILING AND BECAUSE OF THE ABSENCE OF ANY LIKELIHOOD DEBTOR CAN REHABILITATE ITSELF**

**A.    Debtor's Chapter 11 Petition Was Filed In "Bad Faith"**

7

Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b) if filed in bad faith, and the burden is on the Debtor to establish its good faith. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004). The Debtor's bankruptcy petition should be dismissed because is a classic "bad faith" Chapter 11 filing.

As set forth in Spencer's initial moving brief, Courts have recognized the recurring pattern of facts in "bad faith" cases:

> Finding lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber the tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in

8

1092861.1

> defending actions against the foreclosure in state court. Alternatively, the debtor and on creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling the loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals . . .

*In re Little Creek Dev. Co.,* 779 F.2d 1068, 1072-1073 (5h Cir. 1986).

By Debtor's own admission, Virtually every single "bad faith" factor is present here. Debtor has only one asset, the Apartments, which are encumbered by the Mortgage to Spencer. The fact that there are nine Apartment complexes does not change this analysis.

The Debtor has no employees, virtually no income, and its vacancy rates have spiked in the past year. *See the Debtor's Application.* at Pars. 8 – 10. Debtor's argument that Debtor has employees (via a management company) is relevant only to the extent that it demonstrates consistency with the patter than Courts use to determine bad faith.

9

1092861.1

The Debtor has little to no working capital of its own, and virtually no available sources of income. *See Woehrle Cert.* at Par. 7.

Debtor also now admits that it is delinquent in paying real property taxes (in the approximate amount of $29,000.00, and is also delinquent paying post-petition obligations for vendor services.

Debtor's sole asset, the Apartments, are (the subject of a Foreclosure Action. *See Id.* at Par. 16. Spencer's Mortgage claim far exceeds the claims of the Debtor's unsecured creditors, whose claims are relative small. *See* Debtor's Petition, List of Creditors Holding 20 Largest Unsecured Claims (Docket No. 1).

Given these circumstances, allowing this bankruptcy case to proceed would not further any of the purposes of Chapter 11, because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation. *In re Little Creek Dev. Co.,* 779 F.2d at 1073; *In re SB Properties, Inc.,* 185 B.R. 198 (E.D. Pa. 1995). Debtor's unsupportable hope for rehabilitation is belied by the fact that Debtor has admitted that Debtor's rent collection revenue is $90,000.00 below its projections. This

10

in and of itself demonstrates that Debtor's projections are unrealistic and self-serving, and should not be relied upon by the Court as a basis for denying Spencer's Motion.

### B. Cause Also Exists To Dismiss The Case Pursuant to 11 U.S.C. § 1112(b)(4)(A)

The absence of any likelihood that Debtor can reorganize, and the substantial diminution of the estate, constitute an independent basis pursuant to Bankruptcy Code § 1112(b)(4)(A) to dismiss Debtor's case for cause.

As noted, aside from the Real Property, the Debtor has no assets, virtually no income, no employees, and has ceased meaningful operations. *See* Woehrle Cert. at Par. 7.

Debtor's assertions to the contrary are belied its numerous admissions. For instance, Debtor admits that it is $90,000.00 below its projections despite the fact that Debtor has failed and refused to pay (1) $20,000.00 adequate protection payment that it volunteered to the Court to pay as part of its cash collateral motion, (2) any sums due pursuant to the Note and Mortgage, (3) real estate taxes for the month of October 2009 in the approximate amount of $29,000.00, and (4) post petition vendor obligations in the approximate amount of $29,000.00. Clearly, if Debtor cannot realize positive

cash flow while it is not paying these basic and essential expenses, than how is the Court to believe that it can successfully reorganize? It is clear that nothing short of a miracle will resurrect the prospect of reorganization. *See Id.*

Based on the 12 month projections, Debtor will never have sufficient cash flow to pay the sums due under the note, i.e., $105,000.00/month – – and that is without default interest.

History has demonstrated that the Debtor is unable to manage the Apartments profitably. *See Id.* at Par. 6. Under these circumstances, the Debtor has no reasonable likelihood of rehabilitation and the case should therefore be dismissed.

Every day that the Debtor's case is pending, there is a substantial and continuing diminution of the estate. *See Woehrle Cert.* at Par. 15. The Debtor's utility bills are in arrears in the amount of approximately $500,000.00, and are accumulating interest and penalties. *See Certification of James Perry.* Thus, the diminution of the estate is indisputable.

**II**

**IN THE ALTERNATIVE, SPENCER IS ENTITLED TO
RELIEF FROM THE AUTOMATIC STAY
PURSUANT TO § 362(d)(1) TO ALLOW IT TO PROSECUTE
A FORECLOSURE ACTION TO CONCLUSION**

In the alternative, Spencer seeks relief from the stay pursuant to Bankruptcy Code § 362(d)(1) to allow it to prosecute a foreclosure action to conclusion. For the same reasons discussed above concerning Debtor's bad faith filing of this case, "cause" exists pursuant to Bankruptcy Code § 362(d)(1) to grant the Bank Group relief from the stay. *See In re Trident*, 52 F.3d 127 (6th Cir. 1995) (holding that debtor's bad faith can constitute cause under both §§ 1112(b) and 362(d)(1)); *In re Carl Richard Dulisse*, 2001 U.S. Dist. LEXIS 9307 (E.D.Pa. July 5, 2001) ("Filing a bankruptcy petition in bad faith is sufficient cause for dismissal or relief from an automatic stay.").

In addition, cause exists to grant Spencer relief from the stay to prosecute a foreclosure action to conclusion because Spencer's interests in the Real Property are not adequately protected against the diminution in value of the collateral during the pendency of the bankruptcy case. *See United Sav.*

13

1092861.1

*Ass'n. of Texas v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 370 (1988). Given the Debtor's failure to pay its utility bills, the Debtor cannot meet its burden of showing that Spencer's interest in the Real Property are adequately protected. *See Minn-Kota Farm Agency v. Home Federal Savings and Loan Association*, 1992 U.S. App. LEXIS 29605 (8th Cir. 1992) (holding prima face case of lack of adequate protection may be established by showing, among other thinfs, property is not adequately maintained, property taxes are not being paid, insurance coverage is inadequate); *In re Bressler*, 119 B.R. 400, 404 (Bankr. E.D.N.Y. 1990) (finding an absence of adequate protection where "real estate taxes had not been paid for some time and were mounting every day.").

### III

### SPENCER'S CALCULATION OF THE AMOUNT DUE IS FAIR, ACCURATE AND REASONABLE

#### A.   Spencer Is Entitled To A Prepayment Penalty

Debtor alleges - - incorrectly - - that that Spencer's "calculation" of its claim at a total of approximately $19,300,000.00 is improper because Spencer added a "prepayment premium" to the accelerated principal amount. *See* Debtor's Brief at Par 25. In support of this position, Debtor cites to *In re Planvest Equity Income Partners IV*, 94 B.R. 644, 645 (Bankr. D. Ariz. 1988). However, Debtor ignores that fact that this case is not controlling in New Jersey, nor upon this Court.

In New Jersey, a lender is entitled to collect a prepayment penalty, even if it accelerates the indebtedness, so long as the contract expressly provides for this. Mony Life Ins. Co. v. Paramus Parkway Bldg., Ltd., 364 N.J.Super. 92, (App. Div. 2003). Liquidated damages, such as late fees, default interest rates, and prepayment premiums, are subject to the test of reasonableness, that is, whether the stipulated damage clause is reasonable under the totality of the circumstances. *Metlife v. Washington Avenue Associates, L.P.,*

15

1092861.1

159 *N.J.* 484, 493-95, 732 *A.*2d 493, 498-99 (1999).

Here, it is not disputed that the agreement between the parties specifically provides for the prepayment charge even in the event of acceleration. The case cited by the Debtor does not address this issue, nor does it hold that a contractual provision allowing collection of a prepayment charge upon lender's acceleration is prohibited or void.

Finally, the amount of the prepayment penalty is reasonable under the circumstances because it represents the actual or reasonable cost resulting from the "prepayment" of the subject loan.

Therefore, Debtor's contention that the $852,000 "prepayment premium" must be disregarded is without merit.

**B.   Spencer Is Entitled To Interest Pursuant to Its Calculations**

Debtor argues that Spencer is seeking to collect from Debtor interest at the contract rate, plus also interest for the past six months at the default rate. This is not true. The default interest rate component set forth in Spencer's payoff calculation is the net difference between the contract rate and the default rate. Therefore, Spencer is not double charging, and Debtor's assertions to the contrary are without merit.

16

## **CONCLUSION**

Accordingly, for all of the foregoing reasons, Spencer respectfully request that the Court dismiss the Debtor's cause pursuant to Bankruptcy Code § 1112(b), or, in the alternative, grant Spencer relief from the automatic stay pursuant to Bankruptcy Code § 362(d) (1) and (2), and grant such further and other relief as is just and proper.

Dated: